**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 6, 2005
Decided December 20, 2005

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 05-2100

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee,*<br><br>    *v.*<br><br>MICHAEL D. STEPHEN,<br>    *Defendant-Appellant.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division<br><br>No. 04 CR 266<br><br>Samuel Der-Yeghiayan,<br>*Judge* |

**O R D E R**

Michael Stephen pleaded guilty to distributing over 50 grams of cocaine base, 21 U.S.C. § 841(a)(1). In April 2005 the district court sentenced him to 180 months' imprisonment and five years' supervised release. Stephen argues on appeal that the prison sentence is unreasonable because his criminal history category under the advisory sentencing guidelines overstates the severity of his criminal record and because his current conviction stems from a one-time transaction initiated by the government.

In March 2003, a confidential source (CS) working for the FBI called Stephen seeking to purchase crack cocaine. Stephen agreed to meet the CS at a liquor store

in Joliet, Illinois, and sell him 2.5 ounces of crack for $2000.  Stephen arrived at the store without the drugs, and eventually agreed to meet the CS later at a residence in Joliet.  A few hours later, Stephen arrived at the residence and gave the CS a bag containing 55.5 grams (1.96 ounces) of a substance later proven to be crack cocaine in exchange for $1350.

A grand jury charged Stephen with one count of distributing cocaine base, and in he pleaded guilty to the charge without a plea agreement.  At his change-of-plea hearing, Stephen acknowledged that the government could prove beyond a reasonable doubt that he sold 55.5 grams of crack to the CS in March 2003.

The probation officer who prepared the presentence investigation report calculated an advisory guideline range of 151 to 188 months.  She started with a base offense level of 32, *see* U.S.S.G. § 2D1.1(c)(4), and subtracted three levels for acceptance of responsibility, *see* U.S.S.G. § 3E1.1.  Stephen's criminal history category was VI based on his accumulation of 17 criminal history points.  Stephen did not object to the PSR but filed a sentencing memorandum in which he argued that his criminal history category overstated the severity of his criminal record because he had never committed any violent crimes.  He emphasized that a number of his prior convictions were for driving with a revoked or suspended license.  Stephen also urged the court to consider that "the government informant was the deciding factor in the amount of contraband that was to be transacted," but he also conceded that he was not "legally entrapped."  Finally, Stephen asked the court to take into account the "unexplainable disparity" in sentences for distributing powder and crack cocaine.

The government filed a sentencing memorandum arguing for a sentence within the advisory guideline range.  It contended that Stephen's criminal history category does not overstate the severity of his record, notwithstanding the lack of convictions for violent crimes, because he had 28 criminal convictions at the age of 28.  The government also urged the court to disregard Stephen's suggestion that it mattered who initiated the transaction, because Stephen obviously was willing and "able to readily sell the 55.5 grams of cocaine" when contacted by the CS.  Finally, the government requested that the court apply the guidelines applicable to crack offenses without regard to any purported disparity because crack is "more dangerous . . . less expensive, and highly addictive" compared to powder cocaine.

At Stephen's sentencing hearing, the district court concluded that the advisory guideline range in the PSR "accurately reflects the defendant's offense level and criminal history category" and adopted it in full. The court specifically concluded that Stephen had shown no grounds for rejecting the calculation of his criminal history category; on this point and the others Stephen raised, the court "agree[d ] with the government's arguments."  After stating that it had considered

all of the parties' oral and written arguments, the sentencing guidelines, and the factors enumerated in 18 U.S.C. § 3553(a), the court imposed a sentence of 180 months—a term within the advisory range.

In light of *United States v. Booker*, 125 S.Ct. 738 (2005), we will affirm a sentence so long as it is reasonable. In evaluating the reasonableness of a sentence, we continue to be guided by the now-advisory sentencing guidelines in addition to the § 3553(a) factors. *See id.* at 765-67; *United States v. Alburay*, 415 F.3d 782, 786-87 (7th Cir. 2005). Where, as here, the sentence falls within the properly calculated advisory guideline range, it is presumed reasonable. *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). The presumption will be rebutted only where the defendant demonstrates that the sentence is unreasonable when measured against the § 3553(a) factors. *Id.*

Stephen first argues that his sentence is unreasonable because the district court accepted his criminal history category as calculated rather than taking into account the absence of convictions for violent crimes. Although he does not cite U.S.S.G. § 4A1.3(b), his argument appears to be premised on the downward departure that section contemplates when "the criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." Prior to *Booker*, the decision whether to depart downward for this reason was discretionary and thus unreviewable, unless the district court believed there was no authority to depart. *E.g., United States v. Bradford*, 78 F.3d 1216, 1223 (7th Cir. 1996). Although our task is now limited to deciding whether the sentence is reasonable, we look by way of analogy to the prior treatment of this particular sentencing factor. *See United States v. Castro-Juarez*, 425 F.3d 430, 434-35 (7th Cir. 2005) (recognizing that, although "the question before us is ultimately the reasonableness of the sentence," prior decisions interpreting the upward departure under § 4A1.3(a)(1) were useful in determining whether increasing the sentence for similar reasons was reasonable). Stephen presents no persuasive argument why it was unreasonable for the district court to conclude that his criminal history category accurately represented his lengthy, albeit mostly non-violent, criminal history. The downward departure under § 4A1.3 applied "where defendants had steered clear of crime for a substantial period of time," which Stephen has not, and where the "prior offenses were relatively minor in terms of violence or danger to the community." *Bradford*, 78 F.3d at 1223-24. Stephen stresses the non-violent nature of his crimes, but his prior offenses include several more severe than driving without a license, such as reckless driving, possession of cannabis, and resisting a peace officer. The district court was within its discretion to agree with the government that Stephen's 28 convictions as an adult, not all of which counted toward his criminal history category, weigh against a sentence below the guideline range.

   Stephen next contends that he was entitled to a shorter sentence because "the government decided on the amount and kind of contraband that was to be transacted." Stephen conceded in the district court that there is no basis for arguing that he was "legally" entrapped. Despite his efforts to differentiate it, however, his argument is virtually indistinguishable from "sentencing entrapment," a doctrine we do not favor. *See United States v. Estrada*, 256 F.3d 466, 475 (7th Cir. 2002). To warrant a downward departure on this basis prior to *Booker*, Stephen would have to establish that he was not predisposed to engage in a crime of equal severity to the offense of conviction. *United States v. Gutierrez-Herrera*, 293 F.3d 373, 377 (7th Cir. 2002). That the government initiated the drug transaction bears little on whether Stephen was inclined to participate, *see id.*, but that is the extent of his evidence that he was not predisposed to commit the crime. Moreover, even if the sentencing court could have departed downward prior to *Booker*, it would not follow that its decision not impose a lesser sentence due to the government's role in the offense is unreasonable now.

   Finally, Stephen argues that the differential between sentences for crack and powder cocaine offenses renders his sentence unreasonable. We have already rejected an identical argument in the wake of *Booker*. *See United States v. Gipson*, 425 F.3d 335, 337 (7th Cir. 2005). In *Gipson*[1] we reasoned that it would be inconsistent to deem it unreasonable for the district court not to act on a perceived discrepancy between guideline ranges for crack and powder cocaine when we have "routinely upheld the differential against constitutional attack" and "rejected wholesale downward departures from the guidelines on this basis." *Id.* at 337. Nothing prevents the district court from considering the discrepancy in selecting a reasonable sentence, but we have declined to require it.

   Because Stephen has not demonstrated that his sentence is unreasonable when reviewed in light of the § 3553(a) factors, he has not rebutted the presumption of reasonableness. Although his effort comes up short, we thank and compliment his court-appointed counsel, Thomas C. Brandstrader, for his vigorous effort on Stephen's behalf. The judgment of the district court is AFFIRMED.

---

[1]A sua sponte effort to rehear *Gipson* en banc failed (Judges Williams and Evans dissenting). *See United States v. Gipson*, No. 05-1407, 2005 WL 3288385 (7th Cir. Dec. 1, 2005).